1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Ana Lilia Garibay Figueroa,                No.  1:25-cv-00518-JLT-GSA

12            Plaintiff,                         **FINDINGS AND RECOMMENDATIONS
                                                 TO GRANT PLAINTIFF'S MOTION FOR
13        v.                                     SUMMARY JUDGMENT, TO REMAND
                                                 FOR FURTHER PROCEEDINGS, AND TO
14   Commissioner of Social Security,            DIRECT ENTRY OF JUDGMENT IN
                                                 FAVOR OF PLAINTIFF AND AGAINST
15            Defendants.                        DEFENDANT COMMISSIONER OF
                                                 SOCIAL SECURITY**

16
                                                 **OBJECTIONS DUE WITHIN 14 DAYS**
17
                                                 **(Doc. 12, 14)**
18

19

20
     I.      **Introduction**
21
             Plaintiff Ana Lilia Garibay Figueroa appeals a final decision of the Commissioner of Social
22
     Security denying her application for supplemental security income (SSI) under Title XVI of the
23
     Social Security Act.[1]
24
     II.     **Factual and Procedural Background**
25
             On July 6, 2018, Plaintiff protectively applied for Supplemental Security Income (SSI)
26
     benefits under Title XVI of the Social Security Act (Act), 42 U.S.C. § 1382c.  The application was
27

28   _____
     [1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Doc. 3, 8.

                                           1

1    denied initially and on reconsideration.  AR 55, 66.  The ALJ issued an unfavorable decision.  AR

2    29-37.  Plaintiff appealed and the case was remanded pursuant to stipulation.  AR 635–36. The ALJ

3    held another hearing on February 14, 2024.  AR 537–65.  The ALJ issued another unfavorable

4    decision on May 2, 2024.  The Appeals Council denied review and this appeal followed.

5        III.    **The Disability Standard**

6        Pursuant to 42 U.S.C. §405(g), "This court may set aside the Commissioner's denial of

7    disability insurance benefits when the ALJ's findings are based on legal error or are not supported

8    by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

9    1999).  Substantial evidence is evidence that could lead a reasonable mind to accept a conclusion.

10   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a

11   preponderance.  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  The court must consider the

12   record as a whole and may not affirm by isolating supporting evidence.  *Robbins v. Social Security*

13   *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  If the evidence could reasonably support two

14   conclusions, the court "may not substitute its judgment for that of the Commissioner" and must

15   affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

16
17       To qualify for benefits under the Social Security Act, a plaintiff must establish that
         he or she is unable to engage in substantial gainful activity due to a medically
18       determinable physical or mental impairment that has lasted or can be expected to
         last for a continuous period of not less than twelve months.  42 U.S.C. §
19       1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . .
         his physical or mental impairment or impairments are of such severity that he is not
20       only unable to do his previous work, but cannot, considering his age, education, and
         work experience, engage in any other kind of substantial gainful work which exists
21       in the national economy, regardless of whether such work exists in the immediate
         area in which he lives, or whether a specific job vacancy exists for him, or whether
22       he would be hired if he applied for work.  42 U.S.C. §1382c(a)(3)(B).

23       To achieve uniformity in the decision-making process, the Commissioner has established a

24   sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-

25   (f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

26   claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

27       Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial

28   gainful activity during the period of alleged disability, 2- whether the claimant had medically

2

determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. See, 20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of July 6, 2018.  AR 517.  At step two, the ALJ found that Plaintiff had the following severe impairments: Disorders of the Spine; Bilateral Sacroiliac Joint Dysfunction; Bilateral PARS Defect at L5-S1; Osteoarthritis; and Obesity.  20 CFR 416.920(c);  AR 518.  The ALJ also found that claimant has the following non-severe impairments: Thyrotoxicosis Status Post Thyroidectomy/Hypothyroidism; Cervicalgia; and Hyperlipidemia.

At step three the ALJ found that Plaintiff had no impairments or combination thereof that met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 519.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except with the following limitations: she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can frequently balance; she can occasionally stoop, kneel, crouch, and crawl; and she should avoid concentrated exposure to vibrations, unprotected heights and hazardous machinery. AR 519–525.

At step four, the ALJ found that Plaintiff had no past relevant work.  AR 525.  At step five, in reliance on the Vocational Expert's testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform: small product assembler, housekeeper and marker.  AR 526.  Accordingly, the ALJ concluded that Plaintiff was

1  not disabled at any point since the SSI application date of July 6, 2018.  AR 526.

2  **V.    Issues Presented**

3  Plaintiff asserts two claims of error: 1- The ALJ's RFC determination is unsupported by

4  substantial evidence as she failed to explain the discrepancy between the opinion evidence she

5  found persuasive and the RFC in accordance with the regulations (MSJ at 3–8); and 2- The ALJ

6  failed to include work-related limitations in the RFC consistent with the nature and intensity of

7  Plaintiff's limitations and failed to offer any reason for rejecting Plaintiff's subjective complaints

8  (MSJ at 8–12).

9  **A.    RFC Generally; Medical Opinions**

10  **1.    Legal Standard**

11  Before proceeding to steps four and five, the ALJ determines the claimant's residual

12  functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and

13  represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1).  The

14  RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e),

15  416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of

16  the facts and conflicting evidence, stating his interpretation thereof, and making findings."

17  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

18

19  For applications filed on or after March 27, 2017, the new regulations eliminate the pre-

20  existing hierarchy of medical opinions.  The revised regulations provide that "[w]e will not defer

21  or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

22  prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. §

23  404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ

24  will consider the factors of supportability, consistency, treatment relationship, specialization, and

25  other factors. 20 C.F.R. § 404.1520c(c).  Supportability and consistency are the two most important

26  factors, and the agency will articulate how the factors of supportability and consistency are

27

28

considered. *Id.*

Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

## 2.    Analysis

The parties dispute the opinions of the testifying experts, Drs Geneve and Kendrick. Plaintiff contends both opined Plaintiff was able to perform light work with standing/walking for "one to two hours" (Ar. 556) (emphasis added), occasional hazards and occasional postural activities.  Dr. Kendrick added the stipulation that she could perform those tasks when not in severe pain. Ar. 556-57, 561-62.

To begin, with respect to Plaintiff's standing and walking tolerance, both testifying doctors opined that Plaintiff could Plaintiff could stand/walk 1-2 hours.  AR 556, 562.  Similarly, Dr. Wagner, who conducted a consultative physical examination, opined that Plaintiff's standing/walking capacity was one hour at a time, though she could do so 8 hours in a day. Ar. 1222.

The ALJ addressed Dr. Wagner's opinion as follows:

5

Then on January 11, 2024 the claimant underwent a second internal consultative examination also administered by Roger Wagner, MD. (19F). His functional assessment noted she could occasionally lift or carry 21 to 50 pounds, and frequently carry 11 – 20 pounds. She could sit at one time for 2 hours, with a maximum amount of sitting 8 hours. She can stand and walk for 1 hour, with a maximum amount of standing or walking 8 hours. She can perform all upper extremity activities continuously. She can frequently climb ramps and stairs, occasionally climb ladders or scaffolds, stoop, crouch, and continuously balance, kneel, and crawl. (Ex. 19F/2-4).

Based on the foregoing, both of Dr. Wagner's opinion are unpersuasive as they are inconsistent with the record, which demonstrates the claimant can sustain less than light work. Furthermore, Dr. Wagner's opinion from January 2024 lacks clarity as to the exact nature of the claimant's restrictions. As he opined, she could only sit for 2 hours at a time before needing breaks. However, his opinion regarding the total amount she can sit in an 8-hour day conflicts, because if the claimant requires breaks after every 2 hours, then mathematically, she cannot sit for the full 8 hours as some of that time would be used up by her breaks. <u>There is a similar issue with respect to Dr. Wagner's opinions about the length of time she can stand or walk.</u>

AR 524 (emphasis added).

Here, Dr. Wagner opined that Plaintiff could stand and walk up to 1 hour at a time, but 8 hours in a workday, but this appears on its face to be inconsistent as standing/walking 8 hours would imply a full day of standing/walking without any interruption despite Plaintiff's inability to stand/walk more than 1 hour at a time. As such, the ALJ's finding that this opinion was unpersuasive is not supportive of the ALJ's conclusions. Although Dr. Wagner's opinion is somewhat self-contradictory, importantly this does not justify dispensing with the opinion altogether when it is certainly possible that—if Dr. Wagner was contacted about this discrepancy— he might indeed clarify that his intention was to express the more restrictive (claimant friendly) interpretation, not the opposite. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150 (explaining that the ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation.).

This portion of Dr. Wagner's opinion is particularly notable given that both testifying doctors —Drs. Geneve and Kendrick —similarly opined that Plaintiff could stand/walk 1–2 hours.

6

AR 556, 562.

The parties next dispute the extent to which Plaintiff would need additional breaks beyond customary tolerances.  The experts opined that Plaintiff may need such breaks, with Dr. Geneve opining that Plaintiff would possibly need breaks with pain due to abnormal exam findings, while Dr. Kendrick opined that "it all depends on what she's experiencing." Ar. 558–62.

The relevant testimony reads as follows:

The medical expert, DR. [Geneve], having been first duly sworn, testified as follows:

A: Yes. As far as impairments is concerned has to do with her back. . . . X-ray that was performed showing grade one anterolisthesis of L5 on SI, some disc space narrowing of L5, S1 with spurring . . . The back pain is also mentioned elsewhere in the medical record, 1F page 69. There's documentation in 1F page one. There is also on 7F, 14F, documentation in 20F, so [the back pain] is consistently recorded in the record. There is also an MRI that was done. This is 7F page 19 that makes reference to an MRI that was in March of 2018 that has a radiological impression of bilateral L5 part defects with anterolisthesis of L5 on SI mentioned again as well as an annular tear at L5, SI which may contribute to back pain. There was no nerve impingement however. . .  she had another MRI that was done to follow up on the back pain and it basically showed that there's moderate bilateral neural foraminal narrowing, no central canal stenosis. There is mild facet arthropathy. Also the conclusion was stable anterolisthesis of L5 on SI. She was eventually started on opioid medication according to this. In Exhibit 14F page 23 there is documentation of chronic pain syndrome, lumbar degenerative disc disease, lumbar facet arthropathy that was mentioned in the record. And she had another X-ray that was performed in March of 2022, this is Exhibit 20F page one. And there, there is documentation for mild to moderate lumbar spondylosis which is described as bilateral L5 spondylosis, spondyloisis (phonetic], and grade two anterolisthesis. So overall those are the impairments that I noted in the medical record. . . .
. . .
Q: So what if any limitations would you propose that she would have since 2018 – . . .
A: . . 20 pounds occasional limitation for lifting and carrying and ten pounds frequently . . . In terms of sitting, standing, and walking, sitting would be six hours. She may sit six hours in an eight hour work day, standing anywhere from one to two hours, and walking anywhere from one to two hours. . . .

EXAMINATION OF MEDICAL EXPERT 1 BY REPRESENTATIVE:
. . .

Q: Okay. And given the record as a totality would it be reasonable that the claimant's testimony that she needs rest breaks from performing tasks would be supported by

the record?

A: . . . from an objective standpoint. I look at all the exams that are performed. They're not necessarily -- I mean that she had some facet . . . spine back in 2018, there is some issues there. But overall there is no range of motion, there is no deformities, no abnormal gait, all of the things that you would expect to find with severe low back problems. I didn't really have a good sense of that in this particular record. Now there was a referral

. . .

A: to neurosurgery but I don't believe seeing a neurosurgical note where the neurosurgeon kind of says this is what he wants to do . . .

. . .

Q:  in SMG Visalia records, this is 14F-2, limited range of motion in all directions, tenderness to the paraspinals, reflexes of one in the bilateral ankles and patellars, four of five strength in the bilateral lower extremities, tender SI joints. Then when we get later she goes to see PA Austin, and this is 14F-8, moderately decreased range of motion in all directions, tenderness to paraspinals, positive right SI joint, narrow base gait, antalgic gait, slow to rise from chair and walk. Then in 3/9/2022, 14F-26, limited range of motion, moderate shooting somatic pain rated at eight of ten, the paraspinal tenderness, moderately limited range of motion secondary to increased pain, pain nine of ten. If we go down to Family Healthcare Network in 2021 a different treater, Rivera, notices tenderness left lateral flexion with limited range of motion. Then when we come down to Family Healthcare Network this is again -- this now goes to 2023, they're also looking at her hip, limited range of motion of her hip, difficulty staying in a seated position. So we have quite a bit showing a limited range of motion. If we look at the physical therapy they have limited range of motion, restricted hip, limited lumbopelvic stability, strength three to five to four of five, extremely tenderness to palpation of the lower back on the right lower quadrant, tender PSIS and right SI trochanter and glutes. Some of the things at the end of her physical therapy they were unable to reassess it at discharge due to too much pain, that's 1F-71 and 1F-75 to 76. When she went to the neurosciences she was also noted to have slow ambulation, 1F-69. So given all of that would that support the need for potential additional breaks?

A: It is possible. It is possible with pain. You know, it varies. I mean I do have exams where they're normal but yeah, all the ones that you mentioned on this they are abnormal so it is possible.

. . .

ALJ: You can hang -- ME1: Bye-bye. ALJ: -- up now, thank you. There is a second doctor on the phone. Doctor?

 ME2: Yes, Dr. Kendrick.

ALJ: Yes, Dr. Kendrick, and again I apologize, usually the medical experts go first.

. . .

Q: And did -- have you had an opportunity to review the claimant's file?

A: Yes.

Q: And did you find that she suffered from any severe impairments?

A:  Yes. . . . she developed some degenerative disc disease in the lumbar region which probably accounts for really the pain although the so called spondylolisthesis or the defect in the pars can also cause pain. But generally speaking as far as I'm -- as far as I'm concerned if this person didn't experience any pain she wouldn't be here today to talk about –

. . .

A: -- the case and ask for help. Basically -- it's basically a pain case as I look –

. . .

A: -- yes. I agree that the claimant would be capable of light work during times that she wasn't experiencing severe pain. That's what –

. . .

A: -- . . . when it's severe enough because her -- enough problems that she can't work because for obvious reasons she's the only one that can experience it. ALJ: All right. Counsel, did you have any questions? Counsel?

EXAMINATION OF MEDICAL EXPERT 2 BY REPRESENTATIVE:

Q: The prior doctor said the claimant could stand for one to two hours and walk one to two hours, and are you saying she could do that when not in severe pain but could not do that when in severe pain?

A: Yes.

Q: Okay. And would you agree that additional breaks may be required for this claimant?

A: Well, if at work she all of a sudden develops severe pain, yes, if not, no.

Q: Okay. Would you agree that her testimony of requiring breaks is supported by the record?

A: Well, I don't think the record -- I don't think the record really shows that itself. There's nothing in the record that can show that that's convincing.

Q: Would it be reasonable that she would need those breaks given her findings?

A: Well, as I said it all depends on what she's experiencing.

. . .

ALJ: All right. Counsel, did you have anything else?

REP: No, Your Honor. I do think that both of the doctors did note that depending on how the claimant was feeling she -- additional breaks could be possibly needed. I think that's supported with hypo four and certainly supported with every report she has filled out since the beginning of this which of course the doctors are not looking at. They're looking at the medical. But every single thing she's ever filled out opined

to that. And we have Dr. Kendrick saying that it may be required depending on what she's experiencing and the prior doctor saying that it is possible that additional breaks would be needed due to the pain. So –

ALJ: Well -- REP: -- I –

ALJ: -- I guess my thing, Counsel, is that I am unsure of how frequently she has these extreme pains because what she's talking about is chronic pain and -- and Doctor -- the first doctor initially didn't say anything about that in terms of breaks. It's only when he was asked when she was in extreme pain but how often does that happen?

. . .

AR 554-64.

The ALJ stated that these opinions were persuasive finding that Dr. Kendrick opined that Plaintiff did not need breaks. Ar. 524 (n. 17).

As Defendant argues, neither expert opined that Plaintiff would necessarily need extra breaks, though neither expert opined directly to the contrary.  The ALJ stated that both experts opined that "that the claimant's residual functional capacity is consistent with less than light work." AR 524.  But the ALJ's finding here bears a closer examination of the record.  As an example, the ALJ noted in a footnote that Dr. Kendrick opined that when the claimant *was not experiencing* severe pain, she would be able to perform light work. He also testified that he did not agree that the record necessarily demonstrates the claimant would require breaks.  Notably, however, as quoted above, he opined that the lumbar spine pathology depicted in imaging studies *could indeed be a pain generator* and suggested that he did not believe that the claimant was a malingerer and seemingly suggested *he would defer to the claimant's experience of severe pain* even if there was nothing in the record mandating that conclusion.  AR 561.

In short, the testimony was lengthy, choppy and not seamless, thus looking at these statements in isolation does not yield a balanced overview of the testimony. Specifically, the experts equivocated, recognizing the significant pathological and examination abnormalities (PARS defect,

Grade 2 anterolisthesis, facet arthropathy, and moderate foraminal narrowing), all of which are pain generators. A reasonable interpretation of the testimony on balance is that the doctors expressed that the severity of the pain and corresponding need for frequent breaks <u>would be specific to the claimant's subjective pain experience</u>, even though the objective record did not mandate the conclusion that her pain was so severe as to warrant extra breaks, which dovetails into the next issue, namely the credibility of Plaintiff's testimony that she experiences debilitating back pain.

### B. **Subjective Complaints**

#### 1. **Applicable Law**

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other

1  symptom; and 7- Other factors concerning the claimant's functional limitations and restrictions

2  due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

3                                          **2.    Analysis**

4        At the hearing the claimant testified, among other things, that she lived with her husband

5  and children.  Due to her experience of chronic back pain, she is unable to do much other than sit

6  or lie down. She can drive but after about 15 or 20 minutes she is uncomfortable. She testified she

7  took medications for pain relief, used medicated patches and heat packs and received injections.

8  However, they do not provide her relief. (Ex. 3E).

9        To begin, the ALJ determined that Plaintiff's testimony was not consistent with the medical

10  evidence.  AR 520.  The ALJ conceded that Plaintiff's allegations of back and radicular pain are

11  partially supported by the record showing various lumbar spinal abnormalities.  See, e.g. AR 251,

12  332, 1203, 1830.  The record also notes tenderness in her lumbar spine to palpation.  See, e.g. AR

13  464, 1150, 1174.  Conversely, the record also shows walked normally without the need for an

14  assistive device.  AR 285, 464, 1062, 1150, 1229, 1451, 1793, 1867. The record routinely notes

15  normal muscle strength.  AR 293, 464, 1083, 1156, 1247, 1451, 1867. The record occasionally

16  noted normal ROM.  AR 252, 443, 1099, 1247, 1451.  Defendant argues this testimony contradicts

17  "the medical record is a sufficient basis for rejecting the claimant's subjective testimony.";

18  Carmickle v. Comm'r Soc. Sec. Admin. 533 F.3d 1155, 1161 (9th Cir. 2008); 20 C.F.R. §

19  416.929(c)(2) (objective medical evidence is useful in assessing symptoms).

20        However, the objective medical evidence cannot stand alone in the symptomology analysis,

21  despite the inference one might draw from the above-quoted caselaw.  Although objective evidence

22  is "a relevant factor in determining the severity of claimant's pain and its disabling effects.",

23  subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by

24  objective medical evidence." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-

25  3p (citing 20 C.F.R. § 404.1529(c)(2)).

26        Defendant further emphasizes the recommendation that the claimant undergo lumbar spine

27  fusion, though the claimant was hesitant about the potential risks and ultimately declined.  AR 521.

28  citing (Ex. 1F/1, 69; 5F/6, 9).

                                              12

The fact that Plaintiff was a surgical candidate supports, rather than undermines, Plaintiff's testimony about incapacitating pain. The ALJ similarly explained that the claimant was recommended for lumbar spine fusion, however the claimant "was hesitant about the potential risks, and ultimately declined. (Ex. 1F/1, 69; 5F/6, 9)." The ALJ explained that the concern about the risks of this surgery was reasonable. However, the ALJ went on to explain that "the claimant's willingness to proceed with a laparoscopic BTL for undesired fertility, despite the risks including infection, failure, injury to bowel, bladder, blood vessels, anesthesia complications, and death – is indicative of less severe pain symptoms in her lower back." The ALJ stated that this was especially true given the claimant "was informed her chances of getting pregnant at her age were low, and still elected to proceed with the laparoscopic BTL. (Ex. 24F/24, 34, 86)." AR 521–22.

The ALJ's reasoning here is not persuasive as it is an oversimplification. The claimant's willingness to undergo tubal ligation/sterilization surgery despite its risks has no relevance to her willingness to have an unrelated lumbar spine surgery with differing risks.

The ALJ went on to explain that in January 2023 the claimant reported a pain level of 9/10 with medication, and without medication was 10/10. (Ex. 25F/10). "By December 2023, the claimant reported a pain level of 4/10. (Ex. 25F/47)." (emphasis added). This reasoning is equally unpersuasive. Pain levels 9/10 with medication and 10/10 without medication is undoubtedly debilitating. The ALJ then asserts that "by December 2023," Plaintiff reported pain level 4/10. The use of the word "by" in this fashion conveys the impression of sustained improvement over time. However, it is equally likely that the reports of pain level 4/10 were episodic and not indicative of the record as a whole

Additionally, the ALJ noted that "While the treatment notes confirm the claimant is taking her medications, her tox screen results frequently demonstrate negative for codeine and morphine. Thereby indicating the claimant is not consistently taking this medication. Despite which, she still reported overall improvement in her symptoms." AR 522.

The ALJ's emphasis on negative toxicology screens for codeine and morphine is misplaced as is the Commissioner's choice to re-emphasize that reasoning in the response brief. The record reveals that these opioids were prescribed on an "as needed" basis. AR 1294, 1313, 1322, 1356.

13

Declining to use opioids prescribed on an "as needed" basis is not tantamount to treatment non-compliance.

All in all, the ALJ's reasoning as discussed above warrants remand.

## VI.    Findings

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Remand is warranted for the ALJ to conduct further proceedings consistent with these Findings and Recommendations.  See Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (noting that, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation.).

## VII.    Recommendations

For the reasons stated above, the recommendation is that:

1.    Plaintiff's motion for summary judgment (Doc. 12) be **GRANTED.**

2.    Defendant's cross-motion (Doc. 14) be **DENIED.**

3.    The matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Findings and Recommendations.

4.    That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

## VIII.    Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case per 28 U.S.C. § 636(b)(l). Within 14 days of these Findings and Recommendations, any party may file written objections. The document should be titled "Objections to Magistrate Judge's Findings and Recommendations."  The failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   __October 25, 2025__          _____/s/ Gary S. Austin__
                                UNITED STATES MAGISTRATE JUDGE

14